UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARETHA D. NIXON,

          Plaintiff,

vs.                                  Case No. 6:17-cv-187-Orl-40JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

          Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

Aretha D. Nixon ("Plaintiff") is appealing the Commissioner of the Social Security Administration's partially favorable final decision adjudicating her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of depression and anxiety. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed June 5, 2017, at 67, 77, 93, 110, 214. On July 17, 2015, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of July 1, 2010 in the DIB application and May 10, 2009 in the SSI

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

application.[2]  Tr. at 182-83 (DIB), 184-92 (SSI). The applications were denied initially, Tr. at 67-76, 91, 124-30 (DIB); Tr. at 77-90, 92, 132-34 (SSI); and upon reconsideration, Tr. at 110-21, 122, 142-47 (DIB); Tr. at 93-109, 123, 135-39, 148 (SSI).

At a hearing on June 10, 2016, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 40-66.  On August 8, 2016, the ALJ issued a Decision finding that Plaintiff was not disabled on alleged onset disability dates, but that Plaintiff became disabled on July 16, 2015 and remained disabled through the date of the Decision.  Tr. at 21-33. Consequently, Plaintiff was entitled to SSI with a disability date beginning July 16, 2015, but because Plaintiff's date last insured for purposes of DIB was September 30, 2014 and Plaintiff was not disabled as of that date, Plaintiff's DIB claim was denied.  See Tr. at 33.

On October 4, 2016, Plaintiff requested review of the ALJ's Decision by the Appeals Council.  Tr. at 15.  In connection with the request, Plaintiff submitted additional evidence to the Appeals Council in the form of medical records and a brief authored by her attorney. Tr. at 4-5 (Appeals Council Exhibits List and Order); see Tr. at 429-32 (medical records), 318-19 (brief).  On November 30, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3.  On February 3, 2017, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[2]     Although the respective applications were actually completed on July 20, 2015 (DIB) and July 28, 2015 (SSI), see Tr. at 180, 182, 184, the protective filing date of both applications is listed elsewhere in the administrative transcript as July 17, 2015, see, e.g., Tr. at 67, 77, 93, 110.

Plaintiff, emphasizing that she is only challenging the portion of the Decision finding she was not disabled prior to July 16, 2015, makes four arguments on appeal. See Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed August 7, 2017, at 1-2. Plaintiff contends the ALJ "failed to apply the correct legal standards" in doing the following: (1) "determin[ing] that [Plaintiff] did not have a severe mental impairment prior to July 16, 2015"; (2) evaluating the opinion of treating psychiatrist Louise I. Buhrmann, M.D., P.A.; (3) evaluating the opinions of non-examining state agency psychologists Patricia A. Clark, Psy.D., and Dana Deboskey, Ph.D.; and (4) evaluating Plaintiff's subjective complaints regarding the effects of her disorders in finding that Plaintiff "did not suffer from a severe mental impairment from February 8, 2014 through July 1[6], 201[5]." Pl.'s Br. at 2 (summary of arguments); see id. at 6-8 (first argument), 8-10 (second argument), 10-11 (third argument), 12-13 (fourth argument). Responding, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") on October 3, 2017. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"),

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 23-32. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date." Tr. at 23 (emphasis and citation omitted). At step two, the ALJ found:

> Prior to July 16, 2015, the date [Plaintiff] became disabled, [Plaintiff] had the following medically determinable impairments: depression and anxiety. However, [Plaintiff] did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for twelve consecutive months; therefore, [Plaintiff] did not have a severe impairment or combination of impairments.

Tr. at 23-24 (emphasis and citations omitted). Because the ALJ found that Plaintiff did not suffer from severe impairments at step two prior to July 16, 2015, the ALJ did not proceed to other steps with regard to the time period prior to July 16, 2015. See generally Tr. at 28-32. The ALJ found, however, that "[b]eginning on July 16, 2015, [Plaintiff] had the following severe impairments: major depressive disorder and agoraphobia." Tr. at 28 (emphasis and citations omitted).

At step three, the ALJ ascertained that "[s]ince July 16, 2015, [Plaintiff] has not had an impairment or combination of impairments that meet or medically equal the severity of

-4-

one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 28 (emphasis and citation omitted). The ALJ determined that "since July 16, 2015," Plaintiff has had the following RFC:

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple, repetitive, one-to three step tasks. [Plaintiff] can only tolerate occasional interaction with the general public and supervisors, and frequent interaction with co-workers. [Plaintiff] can tolerate occasional changes in the work setting. [Plaintiff] will miss one workday per week due to fatigue, distraction, or lack of concentration.

Tr. at 29 (emphasis omitted). In reaching this RFC, the ALJ found that "beginning on July 16, 2015, [Plaintiff's] allegations regarding her symptoms and limitations are consistent with the evidence." Tr. at 29.

At step four, the ALJ found that "[s]ince July 16, 2015, [Plaintiff] has been unable to perform any past relevant work" because "[t]he demands of [Plaintiff's] past relevant work exceed the [RFC]." Tr. at 31 (emphasis and citations omitted). At step five, after considering Plaintiff's age ("a younger individual age eighteen to forty-nine on July 16, 2015"), education ("at least a high school education and is able to communicate in English"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "[since] July 16, 2015, . . . there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 31, 32 (emphasis and citations omitted). The ALJ concluded that Plaintiff "was not disabled prior to July 16, 2015, but became disabled on that date and has continued to be disabled through the date of th[e D]ecision." Tr. at 32 (emphasis and citations omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

The four issues Plaintiff raises are addressed in turn, with the caveat that all medical opinions at issue (implicating Plaintiff's second and third issues) are addressed together. Since Plaintiff only challenges the ALJ's findings as they relate to the time period prior to

July 16, 2015, the evidence discussed by the undersigned mainly pertains to that time period.

### A. Step Two Findings (Issue One)

Plaintiff first challenges the ALJ's finding at step two that Plaintiff did not suffer from a severe impairment prior to July 16, 2015. See Pl.'s Br. at 6-8. Essentially, Plaintiff argues that the ALJ's election not to find her depression and anxiety to be severe within the meaning of step two is not supported by substantial evidence, especially because "there were multiple medical opinions of record that supported a finding that [Plaintiff's] depression and anxiety were severe impairments prior to July 16, 2015." Id. at 7. Plaintiff also points out that, although not part of the administrative transcript, "[t]here was a prior unfavorable [ALJ's] decision dated February 7, 2014, in which the [prior] ALJ determined that [Plaintiff] suffered from the severe impairment of major depressive disorder versus depressive disorder, not otherwise specified." Id. at 7-8 (citation omitted). Plaintiff attached this prior ALJ's decision as an appendix to her brief. See id. at App'x 1. According to Plaintiff, "[t]here is no indication that [her] condition improved from February 7, 2014 to July 15, 2015." Id. at 8.

Responding, Defendant contends that Plaintiff is inviting the Court to improperly apply "administrative res judicata" regarding the ALJ's step two findings. Def.'s Mem. at 4-5. According to Defendant, "[t]he ALJ properly declined to give the February 7, 2014 decision res judicata effect, as the ALJ's prior decision adjudicates a different time period." Id. at 4. Because "[t]he proceeding at issue here did not address this time period, and the prior decision did not finally adjudicate any issues or facts that were raised in this proceeding," Defendant argues that "administrative res judicata does not apply." Id. at 4-5.

According to Defendant, the record evidence supports the finding that Plaintiff did not have a severe impairment prior to July 16, 2015. Id. at 6. Further, Defendant contends that even if Plaintiff had severe mental impairments prior to July 16, 2015, "that does not require remand because Plaintiff has not proven that these severe impairments, alone or in combination, were disabling before July 16, 2015." Id. at 5.

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

Here, at step two, the ALJ specifically found that Plaintiff suffers from the medically determinable impairments of depression and anxiety, but that prior to July 16, 2015, those impairments were not severe because Plaintiff "did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for twelve consecutive months." Tr. at 23-24 (emphasis omitted). The ALJ then went on to discuss the record evidence during the time-frame at issue, including Plaintiff's self reports, her daughter's reports, and the one treatment note from that time period. Tr. at 25-26. The ALJ concluded with regard to this step:

> In sum, [Plaintiff's] impairments, considered singly and in combination, have not significantly limited [Plaintiff's] ability to perform basic work activities. Thus, prior to July 16, 2015, [Plaintiff] did not have a severe impairment or combination of impairments.

Tr. at 28. The ALJ's discussion of the evidence of record at step two implicates the remaining issues that Plaintiff raises in this appeal. As explained in detail in Sections IV.B and IV.C, infra, when addressing Plaintiff's remaining issues, the ALJ's ultimate finding at step two is supported by substantial evidence.

Regarding the prior ALJ's decision finding that Plaintiff was not disabled through February 7, 2014, the ALJ wrote:

-9-

> The undersigned finds no basis upon which to reopen the determinations on [Plaintiff's] prior applications. Additionally, the provisions of Social Security Ruling 91-5p were considered and do not apply. Accordingly, the previous determinations are final and binding in regard to her application from March 5, 2012. Therefore, the issue of disability is res judicata, involving the same parties and legal questions, and this application will only consider the time period from February 7, 2014, forward, or from the date of her last [ALJ] decision regarding disability.

Tr. at 21 (citations omitted). Plaintiff does not challenge the ALJ's determination that res judicata applied only through February 7, 2014; instead, Plaintiff essentially urges that the ALJ should have accepted the previous ALJ's findings regarding step two because "[t]here is no indication that [Plaintiff's] condition improved from February 7, 2014 to July 15, 2015." Pl.'s Br. at 5-6.

As the ALJ recognized, the previous ALJ considered Plaintiff's applications through the date of February 7, 2014. Given that the ALJ here was considering the applications beginning after that date, he was not bound to follow the previous ALJ's findings as to step two.[4] Plaintiff does not point to any evidence of record to show that her condition did not improve at any point after the previous ALJ's decision. As elaborated upon below, the ALJ's step two findings are supported by substantial evidence in the record; the ALJ did not err at step two.

## B. Medical Opinions (Issues Two and Three)

Plaintiff challenges the ALJ's analysis of three medical opinions: Dr. Buhrmann, a treating psychiatrist; Dr. Clark, a non-examining state-agency psychologist; and Dr.

---

[4] Further, because the previous ALJ's opinion is not part of the administrative transcript but rather is attached to Plaintiff's Brief, the Court should not consider it in determining whether this ALJ's Decision is supported by substantial evidence. A district court's review of the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) is limited to the certified administrative record. 42 U.S.C. § 405(g); see also Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007) (quoting Caulder v. Bowen, 791 F.2d 872, 876 (11th Cir. 1986) (noting that "evidence first presented to the district court [cannot] be considered for the purposes of a sentence four remand because 'a reviewing court is limited to the certified administrative record in examining the evidence'")).

Deboskey, also a non-examining state-agency psychologist. See Pl.'s Br. at 8-11. According to Plaintiff, although the ALJ assigned "great weight" to Dr. Buhrmann's opinion, Tr. at 31, the ALJ only accepted the opinion as of the date of July 16, 2015, which "overlooked the fact that Dr. Buhrmann opined that [Plaintiff's] impairments and limitations had existed since she stopped working in 2009," Pl.'s Br. at 9 (citing Tr. at 426). As to Drs. Clark and Deboskey, Plaintiff argues that the ALJ erred in assigning their opinions "no weight" as they relate to the time period prior to July 16, 2015, because these doctors "had access to [Plaintiff's] prior file that contained additional evidence that they relied on in forming their opinions." Pl.'s Br. at 11; see Tr. at 27 (ALJ assigning no weight to opinions). According to Plaintiff, "[a] prior ALJ may have found [Plaintiff] not disabled as of February 7, 2014, but that does not mean that any medical evidence related to the time period prior to that simply no longer exists for the purpose of establishing a longitudinal picture of [Plaintiff's] mental health impairments." Pl.'s Br. at 11.

Responding, Defendant contends that the ALJ properly evaluated Dr. Buhrmann's opinion because Dr. Buhrmann only started treating Plaintiff on July 16, 2015, and it does not appear Dr. Buhrmann reviewed any medical evidence prior to that date. Def.'s Mem. at 8-11. As to Drs. Clark and Deboskey, Defendant asserts that the ALJ properly discounted these opinions as they relate to the time period prior to July 16, 2015 because they are not supported by the only treating medical evidence in the administrative transcript dated prior to that date. Id. at 11-12.

The Regulations[5] establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed,

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)

(citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, the administrative transcript reflects that Dr. Buhrmann treated Plaintiff beginning on July 16, 2015 (the date that the ALJ found Plaintiff became disabled). See Tr. at 377. On that date, Dr. Buhrmann diagnosed Plaintiff with "Major depression severe," "Agoraphobia," and "Sensory hallucinations." Tr. at 378. She stated that Plaintiff had "significant social and vocational problems" and recommended that Plaintiff "apply for social security disability, something she had done years ago, but got turned down for." Tr. at 378. On June 6, 2016, Dr. Buhrmann filled out a form regarding Plaintiff's ability to perform work-related functions. Tr. at 425-26. In sum, Dr. Buhrmann's suggested limitations in functioning, which were accepted by the ALJ as of Dr. Buhrmann's initial treatment date,

equate to a finding of disability. See Tr. at 425-26; see also Tr. at 31, 32 (ALJ assigning great weight to the opinion and finding Plaintiff disabled since July 16, 2015).

In arguing the ALJ erred with respect to Dr. Buhrmann's opinion, Plaintiff focuses on one question in the June 6, 2016 form: "Based upon a review of the medical records, the patient history provided . . . and the level of severity of the impairments which were diagnosed upon examination, in your opinion, have the above impairments and limitations existed since [Plaintiff] stopped working in 2009?" Tr. at 426; see Pl.'s Br. at 9 (citation omitted). Dr. Buhrmann checked the "yes" box, but added the following qualifier: "However[,] I began seeing her 7/16/15. Saw Dr[.] Pierre in 2008-2009." Tr. at 426. In other words, Dr. Buhrmann seemed to recognize that she did not have personal knowledge of Plaintiff's condition prior to July 16, 2015. Given this recognition, combined with Dr. Buhrmann's treatment notes not reflecting the severity of Plaintiff's condition from a medical perspective[8] prior to the date she began treating Plaintiff, the ALJ did not reversibly err in failing to specifically recognize or discount this portion of Dr. Buhrmann's opinion.

With respect to Drs. Clark and Deboskey, the ALJ wrote:

> Dr. Clark and Dr. Deboskey opined that [Plaintiff's] mental impairments appear to impose some work-related limitations, but do not preclude all work. [Plaintiff] has the capacity to understand and retain simple and most complex instructions. [Plaintiff] is capable of producing the concentrated effort need[ed] to perform such work tasks for two-hour increments during the workday. [Plaintiff] is able to present with an acceptable appearance, cooperate, and carry on a normal conversation. The quality of [Plaintiff's] ability to relate socially is variable and may be limited for sustaining cooperative relations secondary to anxiety symptoms. [Plaintiff] will have some difficulties appropriately responding to

---

[8] The initial note from July 16, 2015 does reflect the reasons Plaintiff was referred to Dr. Buhrmann and some then-recent life events that likely drove Plaintiff to see a psychiatrist. Tr. at 377. However, it also reflects that Plaintiff had not seen Dr. Pierre (the previous psychiatrist) since 2009. Tr. at 377.

> changes in high-stress and fast-paced work environments. [Plaintiff] appears capable of adapting to simple or gradual changes. [Plaintiff] may need help with transportation on a temporary basis.
>
> The undersigned gives no weight to the opinions of Dr. Clark and Dr. Deboskey for the period prior to the E[stablished ]O[nset ]D[ate]. The record only contained one examination during the period between February 8, 2014 and July 16, 2015, and [Plaintiff's] mental status examination findings were unremarkable and did not suggest any limitations.

Tr. at 27.

The ALJ's decision to assign no weight to the opinions of Dr. Clark and Dr. Deboskey prior to the date of July 16, 2015 is supported by substantial evidence. As the ALJ explained, the administrative transcript contains only one treatment note prior to that date. It is dated November 20, 2014 and is authored by Marlene Lindsay, ARNP. Tr. at 371-74. The reason for the visit was listed as "to establish [care] and due to depression." Tr. at 371. It was noted that Plaintiff "was [previously] on [P]ristiqe but it did not work." Tr. at 371. Plaintiff reported "Anxiety," "Emotional lability," "Depression with feelings of hopelessness/Worthlessness," "Difficulty falling asleep," "No hypersomnia," and that she was "Not thinking about suicide." Tr. at 371; see also Tr. at 372. Ms. Lindsay noted that Plaintiff had "[n]o psychological symptoms," although she reported "[a]nxiety with driving." Tr. at 372. Ms. Lindsay also noted that Plaintiff had "[n]o psychomotor retardation." Tr. at 373. She assessed Plaintiff as having "depression with anxiety" and "primary insomnia," referred Plaintiff to a psychiatrist, and prescribed Zoloft (for depression with anxiety) and Zolpidem Tartrate (for insomnia) in the interim. Tr. at 374 (emphasis and capitalization omitted).

Although Ms. Lindsay's one-time note obviously reflects that Plaintiff reported depression (for which a previous medication did not work) and difficulty falling asleep, Ms. Lindsay's note does not reflect much else about the severity of the conditions.  Indeed, Ms. Lindsay referred Plaintiff to a psychiatrist for these matters.  Further, the note does not establish that the effects of the depression had "lasted or [could] be expected to last for at least 12 months."  Davis, 186 F. App'x at 967 (citing Barnhart, 535 U.S. at 216).

Turning back to Dr. Clark and Dr. Deboskey, they both took into account Dr. Buhrmann's notes, Ms. Lindsay's note, along with other medical evidence that predates February 8, 2014 (the beginning of the relevant time period for these applications) and is not in this administrative transcript.  See Tr. at 72-73, 82-85 (Dr. Clark), 99-103, 116-18 (Dr. Deboskey).  So, to the extent that Dr. Clark and Dr. Deboskey opined Plaintiff had some work-related limitations from her mental impairments, they were relying in part on evidence pre-dating the relevant time period, and relying in part on Dr. Buhrmann's notes.  Given the very limited medical evidence in the administrative transcript pre-dating Dr. Buhrmann's July 16, 2015 examination, the ALJ did not err in electing to assign no weight to Drs. Clark and Deboskey's opinions for the time period prior to July 16, 2015.

In sum, the various medical opinions at issue were adequately addressed by and otherwise properly discounted by the ALJ.

### C. Testimony and Reports Regarding the Effects of Plaintiff's Disorders (Issue Four)

Plaintiff argues that "[t]he ALJ failed to articulate any reasons as to why he was not crediting [Plaintiff's] reports regarding her functioning prior to July 16, 2015." Pl.'s Br. at 13.  Responding, Defendant contends that the ALJ properly assessed Plaintiff's subjective statements regarding the effects of her mental impairments.  Def.'s Mem. at 6-8.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ.  Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The Social Security Administration recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.  The Administration has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term."  Social Security Ruling ("SSR") 16-3P, 2017 WL

5180304, at *2 (Oct. 25, 2017).[9]  "In doing so, [the Administration has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id.  "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

      Here, the ALJ followed SSR 16-3P and found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 24-25. The ALJ then went on to discuss, in detail, Plaintiff's function reports submitted to the Administration, her testimony at the hearing, and her daughter's third-party function report. Tr. at 25-26.  The ALJ also discussed the one treatment note in the administrative transcript dated prior to July 16, 2015 (and discussed in detail in Section IV.B., supra). Tr. at 26.  The ALJ's discussion of Plaintiff's testimony, the various function reports, and the medical evidence predating July 16, 2015 reflects adequate consideration of the relevant factors, and the determination that

---

         [9]      There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016).  The same relevant language quoted in this Report and Recommendation appears in this prior version.  See id. at *1.

the effects of Plaintiff's impairments were not as great as Plaintiff alleged prior to July 16, 2015 is supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 6, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:

Honorable Paul G. Byron
United States District Judge

Counsel of record